UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re:

International Gospel Party
 Boosting Jesus Groups, Inc.,

                    Debtor.

Chapter 11
Case No. 10-19012-HJB

## MOTION BY CHAPTER 11 TRUSTEE TO DISMISS CASE

Joseph G. Butler, the duly-appointed and acting chapter 11 trustee in the above-captioned case (the "Trustee"), moves, pursuant to 11 U.S.C. §1112 (b) to dismiss the above captioned chapter 11 case for "cause."  In support of his motion the Trustee states as follows:

1.    On August 19, 2010, (the "Petition Date") International Gospel Party  Boosting Jesus Groups, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§1101, et. seq.) (the "Bankruptcy Code").

2.    On September 17, 2010, the Debtor filed schedules and a statement of financial affairs.

3.    On October 1, 2010, the Court entered an order scheduling a status conference in the case for October 12, 2010.

4.    Following the status conference, the Court, on October 12, 2010, entered an order sua sponte, ordering the appointment of a chapter 11 trustee.

5.    The Trustee was appointed on October 15, 2010.

6.    The Debtor's schedules indicate that it is the owner of the real property located at 554 Massachusetts Avenue, Boston, Massachusetts (the "Real Property"), that the Real Property had a value, as of the Petition Date, of $1,425,100, that the Real Property was the subject of a first priority mortgage held by Tremont Credit Union and MERS, securing a debt in the amount of $375,000.00 and a second priority mortgage held by Members Mortgage Company, Inc., securing a debt in the amount of $400,000.

7.    The online records of the Suffolk County Registry of Deeds confirm that a mortgage from the Debtor to Fourth Federal Savings Bank, securing a debt in the original principal amount of $375,000, was recorded on February 8, 2006, that an Assignment of Leases and Rents by the Debtor to Fourth Federal Savings Bank was recorded on the same date and that an assignment of that mortgage, the assignment of Leases and Rents and a UCC-1 Financing Statement by Northeast Community Bank f/k/a Fourth Federal Savings Bank to Tremont Credit Union was recorded on July 15, 2010.  The records also indicate that on June 2, 2009, a mortgage from the Debtor to Members Mortgage Company, Inc. and Mortgage Electronic Registration Systems, Inc., securing a debt in the original principal amount of $400,000, was recorded.

8.    Counsel to Tremont Credit Union has informed the Trustee that both mortgages are now held by Tremont Credit Union and that the approximate amount owed to Tremont Credit Union on the obligations secured by the two mortgages is $800,000.

9.    It is the Trustee's understanding that the estimated value of the Real Property in the schedules is based upon the assessment of the property by the City of Boston for real estate tax purposes.

10.    The only assets, other than the Real Property, scheduled by the Debtor, were a checking account with a value of $100, a savings account with a value of $27,  loans to Fusion Steel and M & M Ironworks which schedule B stated had a face value of $350,000, and an "unknown" current value and office equipment with a scheduled value of $500.

11.    The only creditors listed in the schedules are the secured creditors listed in schedule D, Tremont Credit Union and MERS and Members Mortgage Company, Inc.,

12.    The Trustee is informed that the Real Property includes a meeting room and six residential units. Schedule G states that as of the petition date, there were leases for four of the units and the Statement of Business Income and Expenses indicated that the gross monthly income of the Debtor was $5890.

13.    There is no cash collateral stipulation filed in the case and the Debtor did not seek an order

authorizing its use of cash collateral.

14.    The Trustee is informed by Debtor's counsel that no debtor in possession account had been

opened by the Debtor as of the date of the status conference held on October 12, 2010.  The Trustee was

further informed by counsel that the Debtor did not use cash collateral and that at least part of the rents

collected by the Debtor subsequent to the filing were turned over to the Tremont Credit Union.  The

Trustee was informed by counsel to Tremont Credit Union that the Debtor, immediately prior to the

status conference, offered to turn over to counsel cash representing rents collected but that counsel

refused to accept the cash.

15.    There is no order authorizing the Debtor to either make payments to Tremont Credit Union on

a prepetition debt or to make any adequate protection payments to Tremont Credit Union.

16.    The Trustee has been provided with a copy of a certificate (no. 10MA001772) from Lloyd's  for

policy  commercial policy no. 10MA001772,  which certificate is dated September 3, 2010 and which

indicates that the policy is effective from August 31, 2010 to August 31, 2011 and that the total charge

for the policy premium, an inspection fee and a surplus lines tax was $5114.88.

17.    The Trustee has also been provided with a copy of an undated "Notice of Acceptance and of

Assignment" from Premium Financing Specialists Corp. which states that the Lloyd's policy obtained by

the Debtor was financed with Premium Financing Specialists Corp., that there was a down payment of

$1739.48, that the amount financed was $3,375.40, that the annual interest rate on the financing was

16.940% and that the financing required that the Debtor make nine monthly payments in the amount of

$402.11 each.  The Trustee was also provided with a notice from Premium Financing Specialists Corp

dated September 10, 2010, and addressed to the Debtor which indicates that a payment in the amount of

$402.11 was due on September 30, 2010.

18.   Upon information and belief, as part of the financing arrangement with Premium Financing Specialists Corp the Debtor purportedly granted Premium Financing Specialists Corp a lien on or security interest in the unearned premiums paid on the policy.

19.   The Debtor did not seek or obtain an order from the Court authorizing it to borrow money from Premium Financing Specialists Corp  or to grant a lien to Premium Financing Specialists Corp  prior to entering into the financing arrangement with Premium Financing Specialists Corp.

20.   The Trustee has been informed that the $350,000 in loans by the Debtor to Fusion Steel and M & M Ironworks listed in schedule B were made shortly after the June, 2009, mortgage to Members Mortgage Company, Inc. was recorded, that the funds to make those loans were obtained from the proceeds of that financing, that the loans were unsecured and that the collectability of those loans is doubtful.

21.   The Trustee is informed that the Debtor is a non-profit corporation and has been informed by counsel to the Debtor that the Debtor would not, at least at this point, consent to the conversion of the case to a case under chapter 7.

22.   The Trustee has also been informed that the Debtor's expectation, at the time the case was filed, was that it would receive an infusion of $400,000 (apparently in the form of a gift) from a church located in Brockton, Massachusetts, which would enable the Debtor to pay off the obligation secured by second priority mortgage, bring the payments on the obligation secured by the first mortgage current and put it in a position where the income generated by the rents on the property would be sufficient to service the remaining debt.  The infusion of cash was apparently supposed to occur early in September.

23.   Although it appears that there may be equity in the Real Property over and above the amounts owed to Tremont Credit Union, the Trustee does not believe that at this point that a reorganization of the Debtor is reasonably in prospect, where the Debtor's income is not sufficient to service its debt.

Moreover, there are no unsecured creditors who would benefit from any reorganization or from a liquidation of the Real Property.

24. 11 U.S.C. § 1112(b)(1) provides that

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104 (a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

25. 11 U.S.C. § 1112(b)(2) provides that

> The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—
> **(A)** there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121 (e) and 1129 (e) of this title, or if such sections do not apply, within a reasonable period of time; and
> **(B)** the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
>> **(i)** for which there exists a reasonable justification for the act or omission; and
>> **(ii)** that will be cured within a reasonable period of time fixed by the court.

26.    11 U.S.C. § 1112(b)(4) provides a non-exclusive list of sixteen examples of circumstances that would constitute "cause" for conversion or dismissal of a Chapter 11 case.

27.    Although most of the sixteen factors enumerated in § 1112(b)(4) are not present in this case, the Trustee submits that the Debtor's failure to open a debtor in possession account, failure to obtain authorization to use cash collateral, postpetition payment of prepetition debt, postpetition borrowing funds and granting a lien without obtaining authorization of the Court in conjunction with the fact that there are no unsecured creditors and no likelihood that a plan will be filed or confirmed, constitutes cause for dismissal of the case.

28.    Accordingly, the Trustee requests  that the Debtor's chapter 11 case be dismissed.

/s/Joseph G. Butler
Joseph G. Butler, as Chapter 11
Trustee of the estate of
International Gospel Party
Boosting Jesus Groups, Inc.
c/o Barron & Stadfeld, P.C.
100 Cambridge Street, Suite 1310
Boston, MA 02114
(617) 723-9800

Dated: October 21, 2010

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re:

International Gospel Party
 Boosting Jesus Groups, Inc.,

                          Debtor.

Chapter 11
Case No. 10-19012-HJB

## CERTIFICATE OF SERVICE

I, Joseph G. Butler, of Barron & Stadfeld, P.C., do hereby certify that on October 21 , 2010,  I

served the Motion By Chapter 11 Trustee to Dismiss Case on the persons on the attached service list by

mailing a copy of the same by first class mail, postage prepaid or as otherwise indicated on the service

list.

Signed under the penalties of perjury, October 21, 2010.


/s/Joseph G. Butler
Joseph G. Butler

Service List
International Gospel Party Boosting Jesus Groups, Inc.
Chapter 11, Case No. 10-19012-HJB

- Eric K. Bradford on behalf of Assistant U.S. Trustee John Fitzgerald
  Eric.K.Bradford@USDOJ.gov

- John Fitzgerald
  USTPRegion01.BO.ECF@USDOJ.GOV

- David M. Nickless on behalf of Debtor International Gospel Party Boosting Jesus Groups, Inc.
  dnickless.nandp@verizon.net, cmann.nandp@verizon.net

- Liam J. Vesely on behalf of Creditor Tremont Credit Union
  lvesely@pierceatwood.com

Via First Class Mail

International Gospel Party
Boosting Jesus Groups, Inc.
554 Massachusetts Ave.
Boston, MA 02118


Members Mortgage Company, Inc.
10 Cedar Street #11
Woburn, MA 01801


Tremont Credit Union and MERS
c/o Lawrence Edleman
Pierce Atwood
One New Hampshire Ave #350
Portsmouth, NH 03801


Internal Revenue Service
P.O. Box 21126
Philadelphia PA 19114


Massachusetts Department of
Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114