**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| In re: <br><br> INTERNATIONAL GOSPEL PARTY BOOSTING JESUS GROUPS, INC., <br><br> Debtor | Chapter 7 <br> Case No. 10-19012-HJB |

**MEMORANDUM OF DECISION**

Before the Court is an "Application for Fee of Counsel to Chapter 11 Debtors" (the "Fee Application") filed by Attorney David Nickless, counsel to International Gospel Party Boosting Jesus Groups, Inc., the debtor in this Chapter 11 case (the "Debtor"). Both the United States trustee and the Chapter 11 trustee object to the Fee Application in part, asserting that Attorney Nickless cannot, consistent with § 330(a) as interpreted by the Supreme Court in <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526 (2004), be compensated by the bankruptcy estate for services rendered following the appointment of the Chapter 11 trustee. But here there is a twist. Attorney Nickless seeks payment from funds that will not be necessary to pay creditors. There are sufficient funds in this case to pay creditors in full, and the funds from which Attorney Nickless seeks payment constitute the type of "surplus" typically returned to a debtor after dismissal of a Chapter 11 case, pursuant to § 349 of the United States Bankruptcy Code.[1]

---

[1] <u>See</u> 11 U.S.C. § 101 <u>et seq.</u> (the "Bankruptcy Code" or the "Code"). All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

I.   FACTS AND POSITIONS OF THE PARTIES

The Debtor, a Massachusetts non-profit organization, filed this Chapter 11 case on August 19, 2010. The Debtor's sole asset was real property (the "Property") valued in the Debtor's schedules at $1,425,100. Shortly after the commencement of the case, it became apparent that the Debtor was operating without the benefit of cash collateral authorization, and the Court ordered the appointment of a Chapter 11 trustee. The United States trustee (the "UST") appointed Joseph G. Butler as the Chapter 11 Trustee (the "Trustee" or the "Chapter 11 Trustee"), and that appointment was approved by the Court on October 15, 2010.

While the Trustee's initial assessment of the case was decidedly pessimistic, see In re Int'l Gospel Party Boosting Jesus Grps., Inc., 464 B.R. 78, 79 n.2 (Bankr. D. Mass. 2012) ("Gospel I"), the Trustee ultimately sold the Property for $1,326,001, an amount sufficient to pay the secured claims against the Property as well as all administrative[2] and unsecured claims. The Trustee currently holds in excess of $200,000 in surplus funds (the "Surplus Funds").[3]

Accordingly, although no Chapter 11 plan of reorganization has been proposed or confirmed, the Debtor's estate has essentially been fully administered. However, two matters related to the case remain pending. The first is the appeal taken by Jeff Ross, the buyer of the Property, from this Court's order denying him payment of one-half of

---

[2] Although one administrative claim remains disputed, the Trustee is holding funds sufficient to pay that claim if required. See infra note 4.

[3] Technically, the Surplus Funds are those remaining after the resolution of the appeal brought by Jeff Ross, see infra note 4, and payment of any additional administrative expenses, not to exceed $7,500, see Order Re Motion by Chapter 11 Trustee for Authority to Pay Administrative and Prepetition Claims, Nov. 7, 2011, ECF No. 115 (the "November 7 Order").

the broker's commission in connection with the sale of the Property (the "Ross Appeal"). See Gospel I, 464 B.R. 78; Notice of Appeal, Feb. 6, 2012, ECF No. 122. The Trustee has previously been ordered to hold the disputed funds in escrow pending the resolution of the appeal. See Nov. 7 Order at 2.[4]

The second unresolved issue is whether and when Attorney Nickless will be compensated for services rendered to the Debtor after the appointment of the Chapter 11 Trustee. As evidenced by the November 7 Order, the parties and the Court initially assumed that, upon dismissal of the Debtor's case (which appeared imminent), the Surplus Funds would be returned to the Debtor. See Nov. 7 Order at 2. The November 7 Order thus authorized "the Debtor . . . to pay any earned but unpaid fees to [Attorney Nickless]." Id.

Meanwhile, however, the Attorney General of the Commonwealth of Massachusetts (the "Attorney General") has filed suit in the Massachusetts Superior Court (the "Superior Court"; the "Superior Court Action") against certain officers, directors, and principals of the Debtor (namely, Dwight Miller, Susie Miller, and Jennifer Faigel), additionally naming the Debtor and the Trustee as defendants. In the Superior Court complaint, the Attorney General alleged that: (1) she was duty-bound to protect

---

[4] Specifically, the November 7 Order provided that "the Trustee is authorized (a) to hold in reserve the sum of $33,150.00 pending final resolution of [Ross's] Motion to Alter Judgment or for New Trial/Hearing Pursuant to Bankruptcy Rule 9023 and/or for Relief under Bankruptcy Rule 9024 with Respect to Denial of Co-Broker Commission to Jeff Ross (docket no. 109) and any claim of Jeff Ross to payment of that amount . . . [and] within 10 days of any decision becoming final regarding the claim of Jeff Ross the Trustee shall pay to Jeff Ross the amount of any award and turn over to the Debtor the balance of the funds, less only further administrative fees . . . ." Nov. 7 Order at 2. At the time the November 7 Order issued, this Court had not yet ruled on Ross's request to reconsider this Court's order denying his claim to co-broker fees. After the Court ruled on the motion to reconsider, however, see Gospel I, 464 B.R. 78, Ross took an appeal of that decision. Thus, the matter is not yet finally resolved, and the funds remain in the Trustee's possession pending a resolution of that appeal.

3

the public's interest in the Debtor as a charitable organization pursuant to Massachusetts General Laws ("MGL") ch. 12, § 8 et seq;[5] and (2) the Debtor's principals, the Millers and Faigel (collectively, the "Individual Defendants"), breached their fiduciary duties to the Debtor by diverting the Debtor's assets for personal use. See Copy of Superior Court Complaint dated Oct. 20, 2011, ECF No. 137. In response to the Attorney General's further assertion that a return of the Surplus Funds to the Individual Defendants (as the individuals in control of the Debtor) should be enjoined to prevent further improper dissipation of the Debtor's assets, the Superior Court issued a preliminary injunction, which ordered in relevant part that:

> the [Trustee] . . . shall hold as an escrow agent in an interest bearing account designated for the [Debtor] any funds the [Debtor] would otherwise be entitled to receive from the bankruptcy estate in the Chapter 11 Case and shall not release custody of said funds to the [Debtor's] officers, directors, or agents, even in the event the Chapter 11 case should be dismissed or the Trustee is otherwise discharged from his obligations as Trustee in the Chapter 11 Case, until further order of this Court . . . .[6]

Preliminary Injunction dated Oct. 28, 2011, ECF No. 137 (the "Superior Court

---

[5] MGL ch. 12, § 8 charges the Attorney General with the duty to "enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof," Maffei v. Roman Catholic Archbishop of Boston, 867 N.E.2d 300, 311 n.20 (Mass. 2007), and "it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings. It is his [or her] duty to see that the public interests are protected . . .," id. at 311 (quoting Lopez v. Medford Cmty. Ctr., Inc., 424 N.E.2d 229, 232 (Mass. 1981)).

[6] Although the Superior Court Injunction specifically stated that "nothing [in the order] shall be construed to preclude the Trustee from otherwise proceeding to administer the Chapter 11 Case, including without limitation filing a motion to dismiss the Chapter 11 Case," no request for dismissal was filed.

Injunction").[7]

On January 31, 2012, Attorney Nickless filed the Fee Application, requesting payment of his fees for services rendered both before and after the appointment of the Trustee. Both the Trustee and the UST filed limited objections to the Fee Application. Neither disputes the reasonableness of Attorney Nickless's fees and expenses; nor do they object to the payment of fees and expenses incurred prior to the Trustee's appointment.[8] Instead, the Trustee and UST argue that Attorney Nickless cannot be reimbursed from the Debtor's bankruptcy estate for those fees and expenses incurred after the appointment of the Trustee, because such payment would run afoul of § 330(a) as interpreted by Lamie v. United States Trustee, 540 U.S. 526 (2004).

---

[7] No party has suggested to this Court that the Commonwealth of Massachusetts acted inappropriately in filing suit against a Chapter 7 trustee in bankruptcy, seeking to both enjoin his actions (albeit after dismissal of the case) and to impose post-dismissal escrow obligations upon him. And the Court chooses not to intercede here *sua sponte*. But a strong argument could be made that the filing of the Superior Court Action against the Trustee violated the automatic stay under § 362(a) and runs afoul of the rule set forth in Barton v. Barbour, 104 U.S. 126 (1881) (ruling that receivers could not be sued in courts other than the one in which the receiver was appointed without first obtaining leave of that court). See Muratore v. Darr, 375 F.3d 140, 143 (1st Cir. 2004) (noting that the Barton doctrine has been extended "to lawsuits against a bankruptcy trustee") (quoting Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000); In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 4 (1st Cir. 1999) ("a long line of cases [relying on Barton] has required leave from the bankruptcy court before allowing an action against the trustee to proceed *in another tribunal*") (emphasis in original). Accordingly, it could be convincingly argued that the Superior Court Injunction is void as a matter of law as against the Trustee. This Court does not doubt the good intentions of the Commonwealth and that it might have been proceeding under the mistaken belief that its actions were permitted under § 362(b)(4). But, in the future, the better – and safer – course of action for the Commonwealth would be to ensure the correctness of its actions by filing a motion for a determination as to whether the automatic stay applies (or, in the alternative, for relief from the automatic stay) and requesting leave to bring suit against a trustee in bankruptcy.

[8] In the absence of any objection to the payment of $7,997.50 of the fees and $1,125 of the expenses requested by Attorney Nickless for services rendered prior to the appointment of the Trustee, the Court allowed payment of those amounts by order dated April 6, 2012. See Order regarding Fee Application, ECF No. 142. Accordingly, the Court's discussion of fees and expenses throughout the remainder of this memorandum refers only to the remaining unpaid $10,088 in fees and $257.45 in expenses incurred *after* the Trustee's appointment.

5

At the hearing on the Fee Application, Attorney Nickless attempted to distinguish <u>Lamie's</u> interpretation of § 330(a) on grounds that, in *this* case, unlike <u>Lamie</u>, the Trustee holds surplus proceeds. He contends that his post-appointment services were carefully limited. He further argues that because the Surplus Funds would, if not for the Superior Court Injunction, be turned over to the Debtor (who would presumably pay his outstanding fees), it would be absurd to find that <u>Lamie's</u> interpretation of § 330(a) prohibits payment of his fees from the funds currently held by the Trustee.

II.  DISCUSSION

The UST and Chapter 11 Trustee are correct that, under § 330(a)(1), as interpreted in <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526 (2004), Attorney Nickless may not be compensated *from the bankruptcy estate* for post-appointment services, since he was not employed by the Chapter 11 Trustee. Section 330(a)(1) provides that the bankruptcy court may "award . . . reasonable compensation and reimbursement of actual and necessary expenses from the estate" to professionals retained under § 327(a). <u>In re Starbak, Inc.</u>, 2010 WL 3927504, *6 (Bankr. D. Mass. 2010). Accordingly, in <u>Lamie</u>, the Supreme Court held that "§ 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327." <u>Id.</u> at 538; see also <u>Morse v. Ropes & Gray, LLP (In re CK Liquidation Corp.)</u>, 343 B.R. 376, 382 (D. Mass. 2006).

Section 327, in turn, authorizes a trustee to employ, with the court's approval, "one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties . . . ." 11 U.S.C. § 327(a). In a Chapter 11 case, a debtor in possession may retain counsel

6

pursuant to § 327(a), thus enabling that counsel to apply for compensation from the bankruptcy estate under § 330(a), "because a debtor-in-possession, pursuant to § 1107(a) of the Bankruptcy Code, has (with certain exceptions not relevant here) all of the rights, powers, functions and duties of a trustee. 11 U.S.C. §§ 327, 1107(a)." In re Bresnick, 406 B.R. 582, 584 (Bankr. E.D.N.Y. 2009), aff'd sub nom Morrison v. U.S. Trustee, 2010 WL 2653394 (E.D.N.Y. June 24, 2010).

When a Chapter 11 trustee is appointed, however, the debtor is no longer a debtor in possession, and no longer retains authority to employ professional persons, including debtor's counsel, under § 327(a). "Once appointed, the Chapter 11 trustee becomes the estate's sole representative," Starback, 2010 WL 3927504 at *6, and the authority to employ professionals vests in the Chapter 11 trustee. Accordingly, debtor's counsel's employment is no longer authorized under § 327(a) – and counsel can no longer be compensated for services under § 330(a) – upon the appointment of a Chapter 11 trustee, unless employed by the trustee under § 327. See Bresnick, 406 B.R. at 585 (quoting In re Footstar, Inc., 323 B.R. 566, 571 (Bankr. S.D.N.Y. 2005)).[9]

In this case, Attorney Nickless was not employed by the Trustee pursuant to § 327. Accordingly, he cannot be compensated *from the bankruptcy estate* pursuant to § 330(a) for his post-appointment services. But Attorney Nickless's right to compensation as Debtor's counsel is not governed solely by § 330(a). So long as the

---

[9] Following conversion of the case to Chapter 7 or the appointment of a Chapter 11 trustee, employment of a debtor's attorney by the trustee would more properly be accomplished pursuant to § 327(e), which allows a trustee, "with the court's approval, [to] employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate . . . ." 11 U.S.C. § 327(e); see, e.g., In re Johnson, 397 B.R. 486 (Bankr. E.D. Cal. 2008) (employment of debtor's counsel by Chapter 11 trustee pursuant to § 327(e) justified and permitted compensation of debtor's counsel under § 330(a)).

services are reasonable, Debtor's counsel can look to the Debtor for payment of his fees after dismissal of a case. See, e.g., In re Schiff, No. 04-14811 (ALG), 2010 WL 3219535, *6 (Bankr. S.D.N.Y. Aug. 10, 2010) ("there appears no dispute that a debtor's counsel is not precluded from seeking payment from the debtor personally"); see also Morrison v. U.S. Trustee, 2010 WL 2653394 at *5 n.2.

Moreover, pursuant to § 349(b), as the First Circuit recognized in In re Gonic Realty Trust, 909 F.3d 624, 627-28 (1st Cir. 1990), this Court retains jurisdiction over funds held by a trustee following the dismissal of a case. Section 349(b) provides that

> *[u]nless the court, for cause, orders otherwise*, a dismissal of a case . . . (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3) (emphasis supplied).[10] In the usual case, funds held by a trustee after dismissal of a bankruptcy case will be returned to the debtor, see Gonic, 909 F.2d at 627 ("As a practical matter, dismissals of bankruptcy proceedings result in the dismissal of all the proceedings filed in that case, as well as revestment of property rights to debtors."), but the bankruptcy court may order otherwise for cause, see id. at 627-28.

At this juncture, however, § 349(b) does not apply because the Debtor's case has not been dismissed, despite the fact that all interested parties appear to agree that dismissal of the case is appropriate.[11] This Court also agrees that dismissal is the most

---

[10] In a Chapter 7 case, distribution of surplus funds to a debtor is controlled by § 726(a)(6). See 11 U.S.C. § 726(a)(6). Because this is not a Chapter 7 case, however, and because there is no Chapter 11 plan governing disposition of the Surplus Funds, § 349 controls the disposition of the Surplus Funds upon dismissal of the case.

[11] The Trustee's delay in filing a motion requesting dismissal of the case is most likely due to language in the November 7 Order which provided that the request for dismissal would be filed

8

appropriate disposition of this case. Section 1112(b) provides that a Chapter 11 case may be converted or dismissed "for cause." 11 U.S.C. § 1112(b). "Although the language of section 1112(b) provides a list of possible circumstances for 'cause,' this is not an exhaustive list, and in fact 'the court is not limited to the enumerated grounds in making its determination of some 'cause.'" Gonic, 909 F.2d at 626 (quoting, citing In re Santiago Vela, 87 B.R. 229, 231 (Bankr. D.P.R. 1988); In re Matter of Markhon Indus. Inc., 100 B.R. 432 (Bankr. N.D. Ind. 1989)).

In Gonic, the First Circuit affirmed the bankruptcy court's determination below that cause existed for dismissal of the Chapter 11 case because the debtor had sold its assets and all creditors had been paid. Id. at 625, 627. Recognizing that the case no longer involved the "reorganization of an enterprise to produce some kind of distribution to third parties," and that the "Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business," the First Circuit agreed that dismissal was appropriate. Id. at 627. Similarly, in this case, the Debtor's sole asset has been sold, all claims have been paid in full, and there appears to be no "rehabilitation" of the Debtor in prospect. Accordingly, the Court finds that dismissal of the case is in the best interest of all parties,[12] and will *sua sponte* order that the case be dismissed pursuant to

---

upon resolution of the Ross matter. At the time the order entered, the parties evidently did not anticipate the delay that would result if an appeal was taken. Because the issues anent dismissal of the case and the Ross Appeal are entirely separate, the case can be dismissed without affecting the Ross Appeal, and the case will remain open until that matter is resolved.

[12] Under § 1112(b), once the court determines that "cause" for dismissal or conversion exists, the court must then determine "which option is in the best interests of creditors and the estate." In re Martinez, -- B.R. --, 2012 WL 1674180, *5 (B.A.P. 1st Cir. May 14, 2012) (quoting Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 WL 4531982, *3 (B.A.P. 1st Cir. Aug. 4, 2008)). Since in this case all creditors have now been paid, conversion to Chapter 7 would serve no purpose and would needlessly incur additional administrative fees. Accordingly, the Court

9

11 U.S.C. § 1112(b).[13]

Because the case will be dismissed, the interpretation of § 330(a) in Lamie has no application here. Both § 330(a) and Lamie are directed at the proper distribution of *estate* funds. See Lamie, 540 U.S. at 538 ("we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from *estate* funds, unless they are employed as authorized by § 327") (emphasis supplied). But "the First Circuit [Court of Appeals] has held that dismissal of the bankruptcy petition immediately *terminates . . . the bankruptcy estate.*" Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno), 320 B.R. 473, 478 (B.A.P. 1st Cir. 2005) (emphasis supplied), aff'd 429 F.3d 16 (1st Cir. 2005); In re de Jesus Saez, 721 F.2d 848, 851 (1st Cir. 1983).[14] And under § 349(b), the Court retains jurisdiction over the surplus, non-estate funds to direct distribution to an entity other than the Debtor for cause. Since Attorney Nickless's reasonable, uncontested fees remain unpaid, the Court finds cause for directing the Trustee to pay Attorney Nickless the remainder of the compensation he is owed upon dismissal of the case.[15]

---

concludes that dismissal, rather than conversion, would be in the best interest of the creditors and the estate.

[13] Given the parties' obvious expectation that this case will be dismissed, the Court finds no reason to refrain from exercising its authority to *sua sponte* dismiss the case. See In re Martinez, 2012 WL 1674180 at *5 ("Numerous courts have held that § 1112(b)(1) also permits a bankruptcy court to dismiss a chapter 11 case, *sua sponte*, for cause.") (collecting cases).

[14] See also In re Streett, No. 13-10-16389 JA, 2012 WL 1413100, *4 (Bankr. D.N.M. April 23, 2012); In re Shields, 431 B.R. 446, 450 (Bankr. S.D. Ind. 2010); Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 401 n.5 (B.A.P. 1st Cir. 2004); In re Steenstra, 307 B.R. 732, 738 (B.A.P. 1st Cir. 2004); In re Garnett, 303 B.R. 274, 278 (E.D.N.Y. 2003); In re Doherty, 229 B.R. 461, 463 (Bankr. E.D. Wash. 1999).

[15] This Court is compelled to further note, as has the Supreme Court for generations, that this is a court of equity. See, e.g., Young v. United States, 535 U.S. 43 (2002); Katchen v. Landy, 382

III.    CONCLUSION

While § 330(a) prohibits payment to Attorney Nickless from the bankruptcy estate for those fees and expenses incurred after the appointment of the Chapter 11 Trustee, the Court finds there is cause to dismiss the case under § 1112(b). Accordingly, the Surplus Funds will no longer be property of the bankruptcy estate. The Court also determines that, pursuant to § 349(b), cause exists to direct the payment of Attorney Nickless's unpaid fees and expenses from the Surplus Funds that will vest in the Debtor upon dismissal of the case. Cause further exists under § 349(b) to order the Trustee: (1) to hold in reserve the sum of $33,150 pending final resolution of the Ross Appeal; (2) within 10 days of the final disposition of the Ross appeal, to pay to Jeff Ross the amount of any award; and (3) to hold the remainder of the Surplus Funds in escrow in accordance with the Superior Court Injunction pending further order from the Superior Court.

An order in conformity with this Memorandum shall issue forthwith.

_[signature]_

DATED:  June 28, 2012                                    _____
                                                        Henry J. Boroff
                                                        United States Bankruptcy Judge

---

U.S. 323, 327 (1996); United States v. Energy Res. Co., Inc., 495 U.S. 545, 549 (1990); Pepper v. Litton, 308 U.S. 295 (1939). Based solely on equitable principles, in a case such as this where all creditors have been paid in full, the Court would be hard pressed to conclude that Lamie precludes this Court from providing compensation to a debtor's counsel before returning a surplus to that debtor upon dismissal of a bankruptcy case.